JOSEPH CORMIER & others *vs.* HAROLD G. HUDSON & another.

Suffolk.    December 6, 1932. — October 25, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Insurance*, Construction of policy, Motor vehicle liability: extraterritorial coverage. *Contract*, Construction. *Equity Jurisdiction*, To enforce insurer's liability. *Words*, "Loss from liability."

In a single policy of insurance issued to the owner of an automobile in this Commonwealth was a provision insuring him in accordance with the provisions of G. L. (Ter. Ed.) c. 90, §§ 1A, 34A–34J, "against loss by reason of the liability to pay damages to others for bodily injuries . . . arising out of the ownership, operation, maintenance, control or use upon the ways of" this Commonwealth of his motor vehicle; and also, under a clause termed "extra-territorial liability coverage," a provision insuring him against "loss from the liability imposed by law upon . . . [him] for damages on account of bodily injuries . . . suffered by any person or persons . . . from accidents

occurring . . . within the limits of the Continental United States of America . . . elsewhere than upon the ways of the Commonwealth of Massachusetts, by reason of the ownership, operation, maintenance, control or use" of his motor vehicle. *Held,* that

(1) The circumstance that both kinds of insurance were combined in one policy did not change the rules of construction which would have been applied to each kind if they had been embodied in separate policies;

(2) The general rules as to the interpretation of policies of insurance, that they are to be construed most strongly against the insurer and that doubtful language is to be resolved against it except in instances where the form or substance of the policy is prescribed by statute, applied to the clause as to extraterritorial liability coverage;

(3) The owner was protected by such extraterritorial coverage against loss from liability established by a judgment for the plaintiff in an action against him by the father of a minor for consequential damages resulting from personal injuries sustained by the minor through negligence of the owner when operating the automobile in another State in October, 1930;

(4) The words of G. L. c. 214, § 3 (10), as amended by St. 1930, c. 340, § 4, were broad enough to include a suit in equity against the insurer to enforce such a judgment;

(5) The combination of both the compulsory automobile insurance and the extraterritorial insurance in one policy was no bar to the maintenance of that suit;

(6) The provision of St. 1930, c. 340, § 5, that the chapter should not apply to compulsory liability policies covering motor vehicles registered in 1930 did not preclude the maintenance of the suit above described, although the automobile was registered in 1930, since its negligent operation did not occur upon a way "of this Commonwealth" and the judgment creditor was not seeking to enforce the compulsory insurance provided by the policy;

(7) The "loss from . . . liability" against which the insurer agreed to indemnify the owner in the clause of the policy as to extraterritorial liability coverage meant loss resulting from the establishment of a judgment liability: the judgment creditor's right to maintain the suit was not dependent upon previous payment by the insured of the judgment.


BILL IN EQUITY, filed in the Superior Court on August 4, 1931, and described in the opinion.

The suit was heard by *Qua,* J., upon an agreed statement of facts. Material facts are stated in the opinion. The defendants appealed from a final decree.

*A. G. Sleeper,* for the defendants.

*J. G. Bryer,* for the plaintiffs.

RUGG, C.J. This is a suit in equity to reach and apply the liability of the defendant insurance company (hereafter

called the insurer) under the extraterritorial clause of a motor vehicle liability policy issued to the defendant Hudson (hereafter called the defendant), a resident of Cambridge in this Commonwealth. The accident out of which this suit arises occurred on October 2, 1930, in New Hampshire while the policy was in full force. Judgments recovered by three of the original plaintiffs injured by the negligence of the defendant in operating his motor vehicle on that occasion have been paid by the insurer. Two judgments were recovered by the plaintiffs now pressing this suit, not for personal injuries to themselves, but for consequential damages for medical expenses and loss of services resulting to them as parents of minor children directly injured by the negligence of the defendant. The issue to be decided is whether these judgments can be enforced against the insurer.

1. The insurer by its policy agreed to indemnify the defendant as the assured, (1) in accordance with the provisions of St. 1925, c. 346 (G. L. [Ter. Ed.] c. 90, §§ 1A, 34A to 34J), "against loss by reason of the liability to pay damages to others for bodily injuries . . . arising out of the ownership, operation, maintenance, control or use upon the ways of" this Commonwealth of his motor vehicle; and also (2) under a clause termed "extra-territorial liability coverage" "Against loss from the liability imposed by law upon the Assured for damages on account of bodily injuries . . . suffered by any person or persons . . . from accidents occurring . . . within the limits of the Continental United States of America . . . elsewhere than upon the ways of the Commonwealth of Massachusetts, by reason of the ownership, operation, maintenance, control or use" of his motor vehicle.

The first point for consideration is whether the words of the extraterritorial coverage clause in their context bound the insurer to indemnify the defendant against loss for consequential damages to parents arising from bodily injuries sustained by their children. This extraterritorial coverage clause was not made compulsory by any statute. The policy comprehended two distinct kinds of insurance. The first was specifically stated to be the compulsory insurance

required by the statute as a condition precedent to the registration of the motor vehicle in this Commonwealth. The second was not required by any statute but was a purely voluntary contract of insurance relating to accidents occurring in certain territory outside of this Commonwealth. Instead of making separate contracts of insurance, the parties chose to embody both kinds of insurance in one policy. The separate provisions must be construed with respect to particular insurance provided. The circumstance that both kinds of insurance are combined in one policy does not narrow, nor enlarge, nor change the rules of construction which would be applied to the different kinds of insurance if they had been embodied in separate policies. It is to be observed, also, that the decisive words are different as to the two kinds of insurance. The compulsory insurance is against "liability to pay damages to others for bodily injuries," while the extraterritorial insurance is against "liability . . . for damages on account of bodily injuries . . . suffered by any person." The general rule as to the interpretation of policies of insurance is that they are to be construed most strongly against the insurer, and doubtful language is to be resolved against it except in instances where the form or substance of the policy is prescribed by statute. This rule has its origin in the well known fact that policies of insurance are invariably drawn by the insurer save where the Legislature has intervened. *Farber* v. *Mutual Life Ins. Co. of New York*, 250 Mass. 250, 254. *Wilcox* v. *Massachusetts Protective Association, Inc.* 266 Mass. 230, 235. The general rule, therefore, applies to the extraterritorial liability coverage of the present policy.

The precise question is whether the words of the policy insuring the defendant against loss from liability "for damages on account of bodily injuries" include indemnity for such consequential damages as are here sought to be enforced. In *Mulvey* v. *Boston*, 197 Mass. 178, the issue was whether a statute limiting the time for bringing "actions of tort for injuries to the person against counties, cities and towns" (St. 1902, c. 406, now G. L. [Ter. Ed.] c. 260, § 4) applied to an action for consequential damages to a plain-

tiff such as here are in issue. It was there said by Chief Justice Knowlton speaking for the court: "The language of the statute is not restricted to actions for injuries to the person of the plaintiff, and we think it is broad enough to include all actions of tort founded on injuries to the person of any one in such relations to the plaintiff that the injury causes him damage. There is nothing in the context to indicate that the words are used in a narrow sense, or that the actions referred to are only those brought by the person receiving the physical impact. The word 'for' is used in its ordinary signification of 'on account of,' 'because or by means of,' or 'growing out of.' . . . we have no hesitation in deciding that the present is an action for a personal injury, within the meaning of the statute." *Capucci* v. *Barone*, 266 Mass. 578. The same conclusion was reached in *Balian* v. *Ogassin*, 277 Mass. 525, where it was held that the words "actions of tort for injuries suffered by a person" as now used in G. L. (Ter. Ed.) c. 90, § 9, providing that in such actions violation of the statute should not be a defence unless the person injured knew or had reason to know of its violation, applied to an action for consequential damages such as is here sought to be enforced. The phrases "bodily injury" and "injury to the person" in connection with torts of this nature are often used as equivalent terms. *Lewis* v. *Springfield*, 261 Mass. 183, 187. The capacity of being a claimant for damages is not confined, as it was in the statute under consideration in *Nestor* v. *Fall River*, 183 Mass. 265, to those receiving bodily injury by personal impact.

There are instances where statutory words more or less similar to those used in the extraterritorial liability clause of the present policy have been given a narrower construction and held not to embrace actions for such consequential damages. *Hey* v. *Prime*, 197 Mass. 474. *Williams* v. *Nelson*, 228 Mass. 191, 196. *Wilson* v. *Grace*, 273 Mass. 146, at page 154. As was said in *Balian* v. *Ogassin*, 277 Mass. 525, at page 532, these decisions rest in part upon the context and historical reasons, which are not controlling in the case at bar. They are illustrative of a tendency to interpret

with some strictness statutes in direct contravention of the principles of the common law. Although the insurer relies upon *Williams* v. *Nelson,* 228 Mass. 191, that case was decided as interpreting the words of a statute.

It is to be observed that the decisive words used in the compulsory insurance clause differ from those in the extraterritorial insurance clause of the policy. The compulsory insurance is against "liability to pay damages to others for bodily injuries." The extraterritorial insurance is against "liability . . . for damages on account of bodily injuries . . . suffered by any person." If the same indemnity had been intended, naturally the same words would have been used. It seems plain that the words of the extraterritorial insurance are broader than those of the compulsory insurance. In some contexts "for" may signify "on account of," yet standing alone the latter words are more comprehensive. The compulsory insurance is by the terms of the policy limited to the coverage required by the statute. The extraterritorial insurance is not so limited. The compulsory motor vehicle insurance act as amended by St. 1928, c. 381, § 4, provided for insurance against loss by reason of liability to pay damages to others for bodily injuries. The amendment in St. 1930, c. 340, § 1, requires insurance not only against liability to pay damages for bodily injuries but also against liability for "consequential damages" such as are here in issue. See now G. L. (Ter. Ed.) c. 90, § 34A. The inference is permissible that the General Court thought that consequential damages were not covered by St. 1928, c. 381, § 4, as to motor vehicle insurance.

We are of opinion that the words of the extraterritorial insurance clause of the present policy embrace the consequential damages here involved.

2. Question is raised whether the plaintiffs can maintain the present suit. It was provided by St. 1930, c. 340, § 4, which took effect before the accident in the case at bar, that "Suits to reach and apply the obligation of an insurance company to a judgment debtor under a motor vehicle liability policy, as defined in section thirty-four A of chapter

ninety, or under any other policy insuring a judgment debtor against liability for loss or damage on account of bodily injury or death or for loss or damage resulting therefrom" could be brought under G. L. c. 214, § 3, cl. 10. These words are broad enough to include the damages claimed by the plaintiffs. The combination of both the compulsory automobile insurance and the extraterritorial insurance in one policy is no bar to the maintenance of the present suit. Each kind of insurance is to be treated as though embodied in a separate policy so far as concerns this point. Therefore, a suit of this nature to reach and apply will lie. The statute now contains terms not used when *Williams* v. *Nelson*, 228 Mass. 191, 196, was decided, and that case is not now controlling upon this point.

It was expressly provided by St. 1930, c. 340, § 5, that c. 340 should not apply to motor vehicle liability policies covering motor vehicles registered for operation in 1930. The present suit is not to reach an obligation under that kind of a policy, which by § 1 was defined as insuring against liability arising upon the ways of this Commonwealth. This provision of delay in the taking effect of the statute is not applicable to suits "under any other policy" affording insurance outside the compulsory automobile insurance law. It simply provided a new remedy and did not affect the liability established by the policy. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3. *Devine's Case,* 236 Mass. 588, 594. It is a remedy available to the plaintiffs.

3. The final question is whether the plaintiffs under the terms of the policy bring themselves within the terms of the governing statute in being able to reach the obligation of the insurer. St. 1923, c. 149, §§ 1 and 2. See now G. L. (Ter. Ed.) c. 175, §§ 112, 113. St. 1930, c. 340, § 4. See now G. L. (Ter. Ed.) c. 214, § 3, cl. 10. The insurance was "Against loss from the liability imposed by law . . . for damages on account of bodily injuries . . . ." The insured has not paid the judgments. That is not of decisive importance because there is no provision of the policy making enforcement of the insurer's liability dependent upon pre-

vious payment by the insured of his loss, as there was in *Connolly* v. *Bolster*, 187 Mass. 266, and *Davison* v. *Maryland Casualty Co.* 197 Mass. 167, 170. It does not appear whether the policy in the case at bar was issued before or after St. 1930, c. 340, took effect. In any event, we are of opinion that there is no bar to enforcement by the plaintiff of the obligation of the insurer, even though the insured has not actually paid the damages assessed against him. The very words of the policy convey the implication that the "loss" against which there is insurance is that arising from the "liability" imposed by the law as evidenced by a final judgment. The insurance is not restricted to the loss arising from the payment of such liability. The "loss from the liability" against which the policy afforded insurance was "that kind of a loss which, in ordinary nomenclature and thought, comes into existence when the liability of the assured becomes irretrievably fixed." *Schambs* v. *Fidelity & Casualty Co. of New York*, 259 Fed. Rep. 55, 60. *Fentress* v. *Rutledge*, 140 Va. 685. *Maryland Casualty Co.* v. *Peppard*, 53 Okla. 515. *Elliott* v. *Belt Automobile Association*, 87 Fla. 545. See *Slavens* v. *Standard Accident Ins. Co. of Detroit*, 27 Fed. Rep. (2d) 859; *Blanton* v. *Kansas City Cotton Mills Co.* 103 Kans. 118. In any event, St. 1923, c. 149, § 1, applied to this policy when issued. The "loss from the liability" against which the insurer agreed to indemnify the defendant, in view of the words of the policy and of the statute as to enforcement of the insurer's obligation and in the light of all the circumstances means loss resulting from the establishment of a judgment liability. This conclusion finds support in the reasoning of *Lorando* v. *Gethro*, 228 Mass. 181, 189. See also *Kana* v. *Fishman*, 276 Mass. 206, 210, where reference is made to "a policy insuring against the loss established by the judgment." The case at bar is not governed on this point by *Valentine* v. *Wheeler*, 122 Mass. 566, and *Victor* v. *Levine*, 267 Mass. 442.

There are decisions having a contrary tendency and holding that there must be actual payment before there can be loss in somewhat similar policies. *London & Lancashire*

*Indemnity Co.* v. *Cosgriff,* 144 Md. 660. *Lowe* v. *Fidelity & Casualty Co. of New York,* 170 N. C. 445. *Transylvania Casualty Ins. Co.* v. *Williams,* 209 Ky. 626. So far as applicable to the facts and statutes here involved, we are not inclined to follow them.

*Decree affirmed with costs.*