Hinkle, J.
On May 25, 1994, the plaintiff, Massachusetts Medical Professional Insurance Association, filed suit against the defendants, Anna Jaques Hospital (Hospital), Catherine Riccio (Riccio), John Guidara (Guidara) and Brooks Marshall (Marshall), for a declaratory judgment under G.L.c. 231 A. The plaintiff asked that the Court declare that: (1) the plaintiff has no duly to defend the Hospital, Riccio and/or Guidara in the underlying action; and (2) the plaintiff has no duty to indemnify the Hospital, Riccio and/or Guidara for any award of damages against them in the underlying action.[2]
On May 27,1997, the matter came before this Court on plaintiffs motion for legal determination of cover *322 age issues.[3] Specifically, the plaintiff argues that the Comprehensive General Liability Coverage Form does not afford coverage for Marshall’s emotional distress claim. For the reasons discussed below, the plaintiffs motion is ALLOWED.
BACKGROUND
The plaintiff and defendants have agreed to the following facts. In 1990, Marshall began her association with the Hospital when she was hired to manage the Hospital’s Employee Assistance Program contracts and to assist in the development of a marketing plan for the Department of Transportation drug testing area. From August 1990 through October 1990, while negotiating a written contract with the Hospital, Marshall worked on a fee-for-service basis. On November 1, 1990, Marshall and the hospital entered into a written contract, which terminated one year later. The contract was signed by Marshall, Guidara and Riccio.
After termination of the contract, Marshall negotiated with the hospital, through Guidara and Riccio, for a renewal contract. Because that contract never materialized, on April 15, 1992, Marshall’s relationship with the hospital ended.
In March, 1993, Marshall brought suit against the Hospital, Riccio and Guidara. In her 10-count complaint, Marshall brought the following claims: fraud and deceit, intentional interference with contractual relations, breach of contract, quantum meruit, intentional infliction of emotional distress, negligent infliction of emotional distress and G.L.c. 93A, §§2, 11. The plaintiff provided the Hospital, Riccio and Guidara with a defense to Marshall’s action, by counsel of their choice, under a reservation of plaintiffs right to disclaim coverage under the policy.
In May, 1995, acting upon the defendants’ motion for summary judgment in the Marshall action, the Court (Grabau, J.) allowed the motion in part and denied the motion in part.[4] In January, 1996, the defendants settled Marshall’s suit for $62,500.00.
On May 25, 1994, the plaintiff filed this case against the Hospital, Riccio, Guidara and Marshall for declaratory judgment seeking to resolve whether any coverage section of the insurance policy issued to the Hospital obligated the plaintiff to indemnify and defend the Hospital, Riccio and Guidara in connection with the Marshall action.
DISCUSSION
The plaintiff maintains that Marshall’s claim for negligent infliction of emotional distress is not within the coverage of the Comprehensive General Liability Coverage Form of the plaintiffs policy issued to the Hospital.[5]
The Comprehensive General Liability Insurance Coverage Form states in pertinent part:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
Coverage B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment judgments or settlements.
The legal issue to be decided at this time is whether Marshall’s claim for negligent infliction of emotional distress constitutes “bodily injury” under the policy. The policy defines "bodily injury” as “[bjodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.”
In the context of insurance policies that cover damages for bodily injury, the Supreme Judicial Court has clearly defined the use of the term “bodily injury.” In Allstate Ins. Co. v. Diamant, 401 Mass. 654 (1988), the Court states that the term “bodily injury” “ [i]s a narrow term and encompasses only physical injuries to the body and the consequences thereof.” Id. at 656. As in this case, the policy in Allstate Ins. Co. limited the harm covered by the policy to physical injury, sickness or disease and did not include nonphysical harm to the person. Id. Since the Supreme Judicial Court found, with other jurisdictions, that the term “bodily injury” is unambiguous and understood it to mean “(h]urt or harm to the human body, contemplating actual physical harm or damage to a human body[,]” the Court concluded that the claims for emotional distress and injury to reputation are not “bodily injuries” under the insurance policy. Id. at 658-59.
The defendants argue that Allstate Ins. Co. differs from this case because in Allstate the injuries alleged did not consist of any physical harm or manifestation of physical harm.[6] In contrast, the defendants maintain that Marshall’s complaint includes a list of physical manifestations which resulted from her emotional distress. As previously stated, these physical ailments include sleeplessness, depression, fatigue, loss of appetite, muscle tension, concentration problems, weight gain and suicidal thoughts. Thus, the defendants assert that the alleged physical manifestations bring Marshall’s negligent infliction of emotional distress claim within the “bodily injury” coverage of the policy.
The Supreme Judicial Court has relaxed the physical harm requirement for negligent infliction of emotional distress claims. In Sullivan v. Boston Gas Co., 414 Mass. 129 (1993), the Court held that not only are objective physical manifestations sufficient to meet the physical harm element of the claim but also more *323 subjective symptoms, like those alleged by Marshall, such as headaches, suicidal thoughts, sleep disorders, fatigue, loss of appetite and concentration problems, constitute sufficient objective evidence to allow a jury to determine the validity of the claims of mental distress.
Although in Sullivan the Court broadened the scope of the physical harm element for negligent infliction of emotional distress claims, the Court emphasized that this decision “[d]oes not affect in any way the treatment of the terms ‘harm’ or ‘injury’ in other areas of the law . . . [Specifically, the Court noted that it has] construed the words ‘bodily injury, in an insurance policy to exclude the coverage of mental pain, and to encompass only physical injuries to the body and the consequences thereof.’ ” Id. at 138 n.9.
Similarly, in McNeill v. Metropolitan Property & Liability Insurance Co., 420 Mass. 587 (1995), the Court stated:
The fact that an essential element of a claim for negligent infliction of emotional distress is “physical harm manifested by objective symptomatology,” Payton v. Abbott Labs, 386 Mass. 540, 557 (1982), does not make such emotional distress a bodily injury. This requirement exists for evidentiary purposes and is not related to the classification of injuries as bodily injuries for insurance purposes. Sullivan v. Boston Gas. Co., 414 Mass. 129, 138 n.9 (1993).
Id. at 590 n.4.
In McNeill, a father brought a wrongful death claim on behalf of his daughter and a negligent infliction of emotional distress claim on his own behalf as a result of witnessing his daughter’s injuries at an automobile accident scene. The issue before the Court was whether the two claims were subject to the same single “per person” limit of liability coverage under the language of the applicable standard personal automobile insurance policy provision. The provision provided limited coverage for all claims resulting from bodily injury to one person in one accident. In deciding the main issue, the Court noted that while the plaintiffs physical ailments might constitute “bodily injury,” “[t]hey [were] the result of the plaintiffs emotional distress, not its cause. The plaintiffs argument that his emotional distress was a bodily injury received in the accident is flawed because emotional distress is not a bodily injury.” Id. at 590 citing Allstate Ins. Co., 401 Mass. at 656 (holding that “ ‘[b]odily injury’ . . . encompasses only physical injuries to the body and the consequences thereof).
In light of the foregoing caselaw, I find and rule that Marshall’s emotional distress, which allegedly caused physical harm, does not constitute “bodily injury” under the applicable insurance policy. As stated above, for insurance purposes, “bodily injury” encompasses only physical injuries to the body and the consequences thereof. Marshall’s alleged physical ailments were the result of her emotional distress, not its cause. Compare Lewis v. Springfield, 261 Mass. 183 (1927), and Canning v. Williamstown, 1 Cush. 451 (1848) (cited by the Supreme Judicial Court in Allstate Ins. Co., 401 Mass. at 656-57, for the explanation that it was important in those cases, where the plaintiff received damage awards for physical injuries in addition to mental suffering, that “[t]he mental sufferings were connected with, and grew out of, physical injuries). Id. at 657 (emphasis added).
Thus, in accordance with the existing precedent in Massachusetts, I find and rule that since physical injury was not the principal harm suffered by Marshall, no plausible means exists of including her emotional distress claim within coverage of the policy. Therefore, the defendants’ argument that Marshall’s emotional distress was a “bodily injury” resulting from the conduct of the Hospital, Riccio and Guidara is flawed because emotional distress is not a bodily injury. See McNeill, 420 Mass. at 590.

 The underlying action involves a suit filed by Marshall against the Hospital, Riccio and Guidara in March 1993. In January 1996, the defendants settled Marshall’s lawsuit.

 On April 22, 1997, at a pretrial conference, this Court directed the plaintiff to move for determination of a coverage issue, to be filed with the defendants’ opposition on May 23, 1997, and to be heard on May 27, 1997. This motion was filed in accordance with that directive. While the motion was entitled Motion for Legal Determination of Dispositive Coverage Issues, it might better have been called Motion for Legal Determination of One Coverage Issue.

 The defendants’ motion for summary judgment was allowed on the following counts: Count II, fraud and deceit against Riccio: Count IV, intentional interference with contractual relations with the Hospital, as it applied to Guidara and the Hospital: Count V, intentional interference with contractual relations with clients: Count VI, breach of contract and Count VII, quantum meruit, with respect to a commission agreement.
The motion was denied on the following counts: Count I and Count III, fraud and deceit, against all defendants; Count IV, intentional interference with contractual relations with the Hospital, as it applied to Riccio: Count VI, breach of contract, and Count VII, quantum meruit, with respect to a base retainer fee; Count VIII, intentional infliction of emotional distress, against Riccio; Count IX, negligent infliction of emotional distress, against all defendants: and Count X, violation of G.L.c. 93A, §11, against all defendants.

 In the plaintiffs memorandum in support of its motion, the plaintiff also asserts that Marshall’s claim that Riccio made disparaging comments which amounted to intentional interference with Marshall’s contractual relations with the Hospital does not come within the policy’s Personal Injury Liability Insurance Coverage Form. However, during oral argument, the plaintiff stated that the only issue before the Court was whether the policy covered Marshall’s negligent infliction of emotional distress claim. The defendants did not dispute this assertion. Moreover, in their opposition memo-randa, the defendants only addressed the negligent infliction of emotional distress claim. Accordingly, the Court will limit its discussion of insurance coverage to the negligent infliction of emotional distress claim.

 The only emotional distress claim asserted in Allstate Ins. Co. was for intentional infliction of emotional distress, which does not require a showing of physical harm.